## THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant, v. YOUNG, Respondent.

(244 N. W. 370.)

(File No. 7276. Opinion filed October 4, 1932.)

O'Brien, Horn & Stringer, of St. Paul, Minn., and Case & Case, of Watertown, for Appellant.

K. C. Patterson, State's Attorney, and Hanten, Hanten & Henrikson, all of Watertown, for Respondent.

CAMPBELL, P. J. For the year 1923 Watertown Independent School District taxed agricultural lands therein at the rate of 10 mills, pursuant to chapter 102, Laws 1923. All other property in said district, including that of plaintiff railroad, was taxed at 14.23 mills. Plaintiff paid the last half of its 1923 tax under protest and instituted this action pursuant to section 6826, R. C. 1919, to recover the excess payment, claiming the measure of excessive tax exacted to be the difference between the tax on plaintiff's property (the valuation thereof being undisputed) computed at 14.23 mills, which plaintiff was compelled to pay and did pay, and the amount which would have been plaintiff's tax on the same valuation if computed at 10 mills, which was the rate granted to the favored agricultural land owners. A demurrer to plaintiff's complaint was sustained below, and such holding was reversed by this court on appeal (see C., R. I. & P. Ry. Co. v. Monahan, Treas., 54 S. D. 434, 223 N. W. 344) upon the authority of Simmons v. Ericson, 54 S. D. 429, 223 N. W. 342, wherein this court held that chapter 102, Laws 1923, was unconstitutional in so far as it purported to limit the levy on agricultural land in school districts to 10 mills. The cause, being remanded to the circuit court, was there tried, and judgment was entered in favor of plaintiff for $5.23 (with interest and costs), from which judgment (and from a denial of its motion for new trial) plaintiff has appealed.

■ Respondent argues in his brief that appellant is entitled to no recovery whatever in this case, for the reason that it fails to appear that appellant made any complaint to taxation officials relative to improper taxation of its property. Respondent submits that, before recovery in any amount could be had in this action, appellant must first show that it has exhausted all available administrative remedies, and cites such cases as Milheim v. Moffat Tunnell Improvement Dist. (1923) 262 U. S. 710, 43 S. Ct. 694, 67 L. Ed. 1194, and First Nat. Bk. of Greeley, Colo., v. Bd. of Commissioners of Weld County, Colo. (1924) 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784. That question is not before us in this case. When the trial court entered judgment below in favor of appellant, it adjudicated adversely to respondent all questions necessarily involved in determining the right of appellant to some recovery. From that adjudication respondent did not appeal. Consequently the propriety of that adjudication is not now before us. The only appeal taken was by the party in whose favor recovery was adjudged below. This appeal assumes the rightfulness of some recovery, and the only question is as to the proper amount thereof.

■ There is not a great deal of agricultural land in the school district in question. It is conceded by all concerned that, if the unconstitutional discrimination of a 10-mill levy (article 11, § 2) had not been made in favor of agricultural landowners, a levy of 14.13 mills on all property in the district (agricultural and non-agricultural) would have been required to raise the necessary amount of tax for the year in question. Appellant claims that it is entitled to recover the difference between the levy of 14.23 mills on its valuation and the amount payable thereon at the 10-mill rate which was wrongfully extended to the agricultural landowners. Respondent contends, and the learned trial judge held, that the limit of appellant's recovery is the difference between its tax at the rate of 14.23 mills (which it paid) and at the rate of 14.13 mills which might lawfully have been levied, and in fact should have been levied, against all property in the district, agricultural and non agricultural. If appellant's theory is correct, the tax which it paid under protest was excessive by $221.14. If respondent's theory is correct, the excess was only $5.23.

Counsel do not cite, and we have failed to find, any case precisely parallel to that here presented. In the usual case of claimed

discrimination, the situation arises by reason of lack of uniformity in valuation. Here the situation arises through a statutory attempt to create a special class of property and extend a favorable rate thereto; the attempted classification being unconstitutional. In principle, however, the precise manner in which the taxpayer is discriminated against is immaterial. The vice of the situation is in compelling one taxpayer to pay more than his proper proportion of the total tax as compared with others similarly situated. Procedural methods are immaterial. It matters not whether the actual discrimination is brought about by levying the tax on all at the same rate but valuing the property of some at a higher proportion of its true value than the property of others, or whether it is accomplished by valuing all property fairly and uniformly, and then by arbitrary and unconstitutional classification levying at a higher rate upon some taxpayers than upon others. Constitutional uniformity is just as much lacking in the one case as in the other. Where the unlawful discrimination results from valuing the property of one taxpayer proportionately higher than that of others, the rate levied against all being the same, the remedy almost universally given to the taxpayer against whom the discrimination exists is to reduce his valuation to the same percentage of true value used in the case of those in whose favor the discrimination was granted and compute his tax accordingly. A contrary dictum of this court injected sua sponte into the opinion in the case of Bagley Elevator Co. v. Butler, 24 S. D. 429, 123 N. W. 866, is flatly contrary to the very great weight of authority, and is an announcement which we can no longer approve. See Pelton v. Nat. Bk. (1879) 101 U. S. 143, 25 L. Ed. 901; Cummings v. Nat. Bk. (1879) 101 U. S. 153, 25 L. Ed. 903; Taylor v. L. & N. Ry. Co. (1898) 88 F. 350, 31 C. C. A. 537; Greene v. Louisville, etc., Ry. (1917) 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Louisville, etc., v. Greene (1917) 244 U. S. 522, 37 S. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97; Illinois Central v. Greene (1917) 244 U. S. 555, 37 S. Ct. 697, 61 L. Ed. 1309; Sioux City Bridge Co. v. Dak. County (1923) 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979; Bohler v. Callaway (1925) 267 U. S. 479, 45 S. Ct. 431, 69 L. Ed. 745; Arlington Mills v. Town of Salem (1927) 83 N. H. 148, 140 A. 163; In re Harleigh Realty Co. (1930) 299 Pa. 385, 149 A. 653; Brink-

erhoff-Faris Co. v. Hill (1930) 281 U. S. 673, 50 S. Ct. 451, 74 L. Ed. 1107. See, also, case notes, 3 A. L. R. 1370, and 28 A. L. R. 983.

There are also cited in the briefs in this case the "bank stock tax cases" wherein bank shares had been taxed at a greater rate than that assessed against other moneyed capital coming into competition therewith whereby an unlawful discrimination is created. It is held in those cases that the bank should pay at no higher rate than is required of the competing moneyed capital. See State Bk. of Omaha v. Endres (1923) 109 Neb. 753, 192 N. W. 322; Munn v. Des Moines Nat. Bk. (C. C. A. 1927) 18 F. (2d) 269;Iowa, etc., Bk. v. Bennett (1931) 284 U. S. 239, 52 S. Ct. 133, 76 L. Ed. 265, reversing same case, Iowa Nat. Bank v. Stewart (Iowa) 232 N. W. 445. That is also the inference as to the proper remedy deducible from the opinions of this court in Commercial State Bk. v. Wilson (1928) 53 S. D. 82, 220 N. W. 152, and First Nat. Bk. v. Eddy (1924) 47 S. D. 233, 197 N. W. 290, rehearing denied, 47 S. D. 297, 198 N. W. 554. Those cases are not precisely on all fours with this one, for in those cases the lower rate was properly extended to the competing moneyed capital. In the instant case, the lower rate extended to agricultural lands was unconstitutional. All land in the district should have been levied upon at a rate necessary to raise the required total of tax, which would have been 14.13 mills. The attempt to limit the tax on agricultural lands to 10 mills caused a corresponding increase in the levy on appellant's land.

Of course, the ideal way to remedy the situation would be to put all parties where they should have been and compel all to pay at the rate of 14.13 mills. But there is now no way of accomplishing that in this case. All taxes in the district for the year in question (excepting those of appellant here involved) have been paid without protest. No taxpayer of the district is a party to this action or before the court save only appellant. Taxation is a practical matter, and discrimination, where it exists in tax exaction, is a fact susceptible of mathematical computation. The only remedy for it is to do away with it. In this case the discrimination against appellant has resulted in compelling appellant to pay at the rate of 14.23 mills on its property when other taxpayers were com-

pelled to pay, and did pay, only 10 mills on property not constitutionally susceptible of different classification. There is now no way to bring the property which paid only 10 mills up to what should have been the common level of 14.13 mills. It follows that, under the circumstances of this case, the only way of doing away with the discrimination is to bring appellant down to the 10-mill rate which was paid by the favored class. Respondent's argument is that, since appellant could lawfully have been compelled to pay at the rate of 14.13 mills, it suffers no injury if its tax rate is reduced to that rate. It sounds reasonable on the face of it to say that a party who is unlawfully compelled to pay too high a tax has no further ground of complaint if his tax is reduced to the amount that he could lawfully have been required to pay. The fallacy of that argument in the instant case, however, lies in the assumption, as an absolute verity unrelated to other existent facts, that a tax at the rate of 14.13 mills could lawfully have been levied against the property of appellant. A tax of 14.13 mills could never lawfully have been levied against the property of appellant, excepting only upon the condition that a tax at the same rate was levied against all other property of the same class in the taxing district. There never was a time when appellant could lawfully have been compelled to pay at the rate of 14.13 mills while other taxpayers in the district were enjoying a rate of 10 mills on the same class of property. As the situation now stands, some taxpayers of the district upon the same class of property have paid only 10 mills. Appellant is discriminated against so long as it is compelled to pay any higher rate, and to reduce appellant's tax rate from 14.23 mills to 14.13 mills does not remove the discrimination, but merely makes a slight reduction in the amount thereof.

It is not material that all other taxpayers in the same situation as appellant have paid their excessive tax without protest; nor is it material that, if there had been no unlawful discrimination, all could have been taxed at the rate of 14.13 mills; nor is it material that the statute by virtue of which the low rate was fixed for agricultural land is unconstitutional. If adequate reason existed for the attempted classification, the statute would not be unconstitutional, and there would be no unlawful discrimination because of the difference in rate. Appellant is entitled, under the

circumstances of this case, to the 10-mill rate, not by virtue of the statute, nor because it is a rate which ought ever to have been extended to any one in the taxing district, but solely because of the fact that the 10-mill rate (however wrongfully) was in fact extended to other taxpayers on the same class of property from whom no higher rate can now be collected. There being now no way to bring the favored persons up to the level where all should have been, the only way to remove the discrimination is to bring appellant down to their rate, even though it is a rate lower than any one was ever lawfully entitled to receive.

It follows that the stipulated facts and findings do not support the conclusions of law and judgment entered below. The judgment and order appealed from are reversed, and the cause remanded, with directions to enter conclusions and judgment on the present findings in harmony with the views herein expressed and awarding to appellant the relief demanded in its complaint.

POLLEY, WARREN, and RUDOLPH, JJ., concur.
ROBERTS, J., disqualified and not sitting.